**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

VICTOR L. JORDAN,

      **Plaintiff,**

         **v.**                        **CAUSE NO. 3:23-CV-694-JTM-AZ**

T. MACE, et al.

      **Defendants.**

## OPINION AND ORDER

Victor L. Jordan, a prisoner without a lawyer, filed a complaint. (DE # 1.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Jordan alleges that on May 23, 2023, and May 24, 2023, he had a mental breakdown and used his emergency button to inform Deputy Albright[1] of his condition. He had been having suicidal thoughts and he had been instructed to use the emergency button if needed. Deputy Albright did not respond immediately so Jordan kicked his

---

[1] Deputy Albright is not a defendant in this action.

door. Cpt. Murray[2] and Deputy Dishman arrived. Jordan told Capt. Murray that he was suicidal. He was placed in an emergency restraining chair (ERC). Deputy Albright and Levine[3] made their rounds. Jordan told them he needed to go to the bathroom. They left and did not come back for some time, so Jordan urinated on himself. Cpt. Murray came down and took Jordan for a shower. While Jordan was showering, Deputy Page[4] and Deputy Albanease came in. Deputy Albanease called Jordan names and threatened to harm him.[5] Jordan yelled for Cpl. Hutts to assist. He arrived. Jordan was then placed in a padded cell. He was provided with only a smock that does not cover his genitals.

Deputy Dishman told Jordan that he was going to be moved. The cell he was in had a camera and the new cell did not. Jordan believed the new cell offered plenty of ways to harm himself. He was too distraught to comply to restraints and attempted to hit his head on the nearest object. He was again placed in the ERC.[6] Jordan protested the suicide smock by opting to be fully naked. He does not feel there is a meaningful difference between being naked and having a smock on that offers inadequate coverage.

---

[2] Captain Murray is not a defendant in this action.

[3] Levine is not a defendant in this action.

[4] Deputy Page is not a defendant in this action.

[5] It is unclear if Jordan is attempting to state a claim against Deputy Albanease for calling his names and threatening to harm him, but these allegations are far too vague to state a claim even if that was his intention.

[6] Jordan includes a section discussing past assaults in vague terms without linking his allegations to any defendant in this case. He is not alleging that he was assaulted in this case, so it is unclear why he has included these allegations.

Deputy Dishman forced Jordan to wear a sheet by tying it around his waist and fastening it to the chair. The sheet still left Jordan's genitals exposed.

When the next shift started, Jordan told Cpt. Hutts that he was okay to leave the chair, but he did not want to go to S1-2 segregation for his own safety and security. Cpl. Hutts did not remove Jordan from the chair. Deputy Mace and Deputy Guzman did not allow Jordan an opportunity to use the bathroom. He urinated on himself again and Deputy Mace and Deputy Guzman left him in the ERC until the next shift. It is unclear how much time remained between when Deputy K. Mace and Deputy Guzman knew Jordan had urinated on himself and when the next shift arrived.

Deputy Smith[7] and Deputy Salary arrived in the morning. Jordan felt humiliated. He was again taken for a shower. Cpl. T. Mace asked Jordan if he wanted to come out of the chair. Jordan indicated that he did want to come out of the ERC but he was unwilling to be moved to S1-2 due to safety and security concerns. Jordan was told that it was S1-2 or nothing, so he was placed back in the chair where he remained for hours.

Jordan told Deputy Mitchell and Deputy Salary that he needed to use the bathroom. Deputy Michell said to give her two minutes because she had someone taking a shower and they would be done soon. Jordan told her he could not wait much longer. It took her a long time to return. Smith and Deputy Salary returned without Deputy Mitchell, but Jordan had already urinated on himself a third time. He asked to remain in the chair because he was angry and confused. He also asked Smith if he could

---

[7] Smith is not a defendant in this action.

3

see Ms. Walker from Mental Health. Smith said he would let her know. Jordan urinated on himself again. He says he was "just bathing in [his] humiliation and sorrow." (DE # 1 at 6.)

Cpl. Mace gave Jordan a conduct report for urinating on himself. Deputy Smith told him it was not Jordan's fault, but Jordan still had to go to a hearing. Someone (it is unclear if it was Cpl. Mace or Smith) asked Jordan if he was ready to get out of the chair and explained that he would go to S1-2. This person said that they did not care if Jordan hurt himself or killed himself.

Someone from mental health came to see Jordan. After that, he was given a shower and placed back in the padded cell on the instructions of someone from administration. Jordan indicates he was in the ERC for 18 hours and urinated on himself a total of five times.

Because Jordan was a pretrial detainee at the time of this incident, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, the severity of the security problem, the threat the officer reasonably perceived, and whether the plaintiff was actively resisting. *Id.* at 397.

4

Here, Jordan alleges that he spent most of an eighteen-hour period in the ERC, but he concedes he was suicidal, he was distraught and unable to comply to restraints, and when given the opportunity to leave the chair he made it clear that he did not want to go to the cell where he was to be placed. He was monitored throughout this time and asked several times if he was ready to get out. He urinated on himself, but he was given opportunities to shower after these incidents. After one incident, he made it clear he wanted to remain in the chair. Many of Jordan's allegations are vague. He doesn't provide details like how long he was left in the chair after Deputy Mace and Guzman learned he had urinated on himself. It is at times unclear who Jordan is referring to, and the complaint contains many allegations regarding individuals who are not defendants. Without more details, it cannot be plausibly inferred that any of the defendants that Jordan has named wrongly placed him in the ERC chair or failed to remove him from the chair.

Jordan indicates he has sued supervisors because he suspects that there are unconstitutional policies that are causing him to be treated in this manner. But, nothing in the complaint suggests that there is any unconstitutional policy. Jordan freely admits he has serious mental health problems, and it is clear from the complaint that this manifests in behavioral problems, including deliberately hitting his head on the nearest object and being unable to cooperate to be restrained. Some officers have engaged in rude behavior like name calling and threats of an unknown nature, but none of the allegations in the complaint rise to the level of a constitutional violation.

This complaint does not state a claim for which relief can be granted. If Jordan believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) **GRANTS** Victor L. Jordan until **July 15, 2024**, to file an amended complaint; and

(2) **CAUTIONS** Victor L. Jordan if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

**SO ORDERED.**

Date: June 13, 2024

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

6